**McKENNEY, Appellant and Cross–Appellee,**

v.

**HILLSIDE DAIRY COMPANY, Appellee and Cross–Appellant, et al.**

[Cite as *McKenney v. Hillside Dairy Co.* (1996), 109 Ohio App.3d 164.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68392.

Decided Feb. 2, 1996.

166

Steven A. *Sindell* and *Stephanie Kess*, for appellant and cross-appellee.

*Aubrey B. Willacy* and *Michelle A. Lafferty*, for appellee and cross-appellant.

*Betty D. Montgomery*, Attorney General, and *Q.A. Corsi*, Assistant Attorney General, for appellee and cross-appellant Administrator, Bureau of Workers' Compensation.

McMONAGLE, Judge.

This is an appeal from a final judgment of the Cuyahoga County Court of Common Pleas entered upon a jury verdict and the jury's answers to interrogatories in a workers' compensation matter on November 2, 1994, as well as on January 11, 1995.

For the reasons set forth below, we affirm in part and reverse in part the decision of the lower court.

The pleadings, transcripts and exhibits reveal the following facts relevant to the issues in this appeal. Plaintiff-appellant Freddie Richard McKenney was employed as a truck driver and delivery man by defendant-appellee Hillside Dairy Company, a self-insured employer under the Workers' Compensation Act. On September 8, 1989, while in the course and scope of his employment, the plaintiff sustained a compensable injury when he was struck in the head by an overhead garage door at a customer location. Plaintiff was taken from the scene to the emergency room of St. Vincent Charity Hospital, where he was first seen by a nurse, who recorded the history and his complaints, and then by a physician, who examined, diagnosed and treated the plaintiff's injuries. Hospital records indicated that the plaintiff was treated for "laceration of the left lateral orbit," "abrasion to scalp," "traumatic iritis left eye," and "contusion of the skull." Plaintiff retained counsel and was referred to William Kay, M.D., who saw

plaintiff on September 12, 1989 and diagnosed the plaintiff with further injuries, *viz.*, laceration to the left eye, strained neck muscles, strained lower back muscles and post-traumatic headaches.

Administratively, on October 17, 1989, the defendant employer, Hillside Dairy ("Hillside"), certified the validity of the plaintiff's claim on the back of the initial C–50 with the words: "The employer recognizes the claim for laceration of left orbit, abrasion to scalp per hospital records." This partial certification placed in dispute the plaintiff's further allegations of injuries to the left eye, lower back, neck, and shoulder and "headaches."

On November 14, 1989, the Bureau of Workers' Compensation formally acknowledged the dispute regarding the further injuries and referred the claim to the Industrial Commission for formal hearing. Thereafter, Hillside, by its actuarial service company Robinson–Conner, filed four separate "Self–Insured Semi–Annual Reports of Claim Payments" (Form C–174) with the administrative body as follows:

(1) The C–174 dated May 8, 1990 noted that the claim was allowed for "Contusion to skull, laceration left eye, strain neck/low back/headaches left."

(2) The C–174 dated July 12, 1990 noted that the claim was allowed for "Contusion skull/laceration left eye/strain neck and low back."

(3) The C–174 dated November 16, 1990 noted that the claim was allowed for "Contusion skull/laceration left eye/strain neck and low back."

(4) The C–174 dated April 2, 1991 noted that the claim was allowed for "Contusion skull/laceration left eye/strain neck and low back."

Despite certain injuries within the claim having been in dispute, the record does not indicate that Hillside made any attempt to invoke the jurisdiction of the bureau or commission in order to seek an order of modification of the C–174 reports.

Employer Hillside stopped paying temporary total disability benefits in September 1990 due to the lack of medical reports to support the March–August 1990 benefit period.

The disputed claim had been reviewed by the Administrator of Workers' Compensation, through the Self–Insuring Employers Evaluation Board, the Industrial Commission, the Cleveland Regional Board of Review and the Industrial Commission's staff hearing officers. Administratively, on May 11, 1992, the Industrial Commission's staff hearing officers affirmed the Cleveland Regional Board of Review and allowed the plaintiff's claim for (1) laceration of the left lateral orbit, (2) abrasion to scalp (left parietal area), (3) contusion to skull, (4) traumatic iritis of the left eye, (5) cerebral concussion, (6) postconcussion syn-

drome, (7) strain and/or myofascitis of the cervical area, (8) strain and/or myofascitis of the lumbar area, and (9) post-traumatic headaches, as supported by the medical evidence presented by Drs. Tucker, Gustafson and Kay.

Hillside appealed the Industrial Commission's allowance of plaintiff's workers' compensation claim *de novo* in the court of common pleas, pursuant to R.C. 4123.519, on July 15, 1992. Hillside did not challenge plaintiff's right to participate for the injuries described as (1) laceration of the left orbit, (2) abrasion of the left parietal area of the scalp, and (3) contusion of the skull. However, Hillside denied that the accident proximately caused plaintiff to sustain the injuries described as (1) traumatic iritis of the left eye, (2) cerebral concussion, (3) postconcussion syndrome, (4) post-traumatic headaches, (5) strain and/or myofascitis of the cervical area, and (6) strain and/or myofascitis of the lumbar area. No claim had ever been made administratively for the condition of posttraumatic stress disorder.

On February 5, 1993, plaintiff filed a motion for summary judgment based upon the self-insured employer's certification forms, C–174, which indicated the allowed conditions of the claim. The summary judgment motion was overruled by the trial court on May 6, 1993. On July 1, 1994, plaintiff filed a motion for leave to file a renewed motion for summary judgment, with the renewed motion grounded on the same legal theory of employer certification and supported by a newly decided Ohio Supreme Court case, *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138. The trial court granted the motion for leave to file the renewed motion and overruled the motion on September 13, 1994.

Before commencement of trial, the parties stipulated on the record that McKenney was entitled to participate for three injuries: (1) laceration of the left lateral orbit, (2) abrasion to scalp, and (3) contusion of the skull. The parties stipulated to the injuries in dispute: (1) traumatic iritis of the left eye, (2) cerebral concussion, (3) postconcussion syndrome, (4) strain and/or myofascitis of the cervical area, (5) strain and/or myofascitis of the lumbar area, and (6) post-traumatic headaches. The case went to trial on these issues. On motion for a directed verdict, the trial court determined that the appellant was not entitled to participate for the previously claimed injury of traumatic iritis left eye. The issue of "post-traumatic stress" was testified to at trial by plaintiff's expert. Prior to final argument, appellant's counsel offered a proposed instruction which would have presented for jury determination the additional injury of post-traumatic stress disorder and a jury interrogatory as to that alleged injury. Appellant's counsel moved to amend the complaint to conform to the evidence adduced at trial on the issue of post-traumatic stress disorder. Prior to final argument, the trial court rejected the requested instruction, jury interrogatory

and the amendment of the pleadings, thereby excluding from jury consideration the issue of whether appellant sustained post-traumatic stress disorder as a result of the work-related accident.

Judgment was entered upon the jury verdict on November 2, 1994. The verdict entitled the plaintiff to participate in the Workers' Compensation Fund for the following additional conditions: cerebral concussion, postconcussional syndrome, strain and/or myofascitis of the cervical area, and post-traumatic headaches. By jury verdict, it was determined that the plaintiff was not entitled to participate for the condition of strain and/or myofascitis of the lumbar area.

Hillside filed a motion for judgment notwithstanding the verdict on the jury determination in favor of plaintiff on the conditions of (1) cerebral concussion, (2) postconcussion syndrome, and (3) post-traumatic headaches. The motion was overruled by the trial court on December 12, 1994.

On January 3, 1995, a hearing was held on the issue of costs and attorney fees. The motion to tax costs and for attorney fees was granted, in part, pursuant to R.C. 4123.512(F), to the statutory limit of $2,500. Verdict was entered on January 11, 1995.

Plaintiff filed a timely notice of appeal. Defendants Hillside and the Administrator of Workers' Compensation each cross-appealed. Plaintiff brings four assignments of error for our review; Hillside brings three assignments of error for our review; and cross-appellant Administrator of Workers' Compensation brings one assignment of error for our review.

Plaintiff's First Assignment of Error

"Where a self-insured employer, subsequent to the initial allowance of a workers' compensation claim, certifies medical conditions as allowed on a 'self-insured semi-annual report of claim payments' (Form C–174), and where there has been no administrative order modifying the self-insured employer's allowances of those conditions, the self-insured employer has conclusively granted those conditions as part of the claim, and it is reversible error for the trial court in a workers' compensation de novo appeal to overrule claimant/appellant's motion for summary judgment as to those conclusively granted conditions."

■ Plaintiff argues that during the administrative process, Hillside, on four separate occasions, filed C–174 forms which contained, as an allowed condition, "low back strain" and, therefore, summary judgment on the allowance of low back strain should have been granted by the trial court.

Plaintiff contends that the authorities are clear that such certified medical conditions allowed on a "Self–Insured Semi–Annual Report of Claim Payments" (Form C–174) by a self-insured employer are conclusively part of the claim.

*State ex rel. Baker Material Handling Corp., supra,* 69 Ohio St.3d at 208, 631 N.E.2d at 144. In his first motion for summary judgment, plaintiff relied upon *Garrett v. Jeep Corp.* (1991), 77 Ohio App.3d 402, 602 N.E.2d 691, and *State ex rel. Jones v. Indus. Comm.* (Oct. 20, 1983), Franklin App. No. 83AP–256, unreported, 1983 WL 3734. In *Garrett,* the court determined that where the self-insured employer, subsequent to initial certification of the workers' compensation claim, authorized surgeries and paid medical and disability benefits based on a condition not originally certified in the claim but which the employer had reported as "allowed" on workers' compensation forms (C–174), a conclusive determination that it had granted allowance of that condition into the claim had been made. In *Jones,* the court determined that the Industrial Commission erred when it evaluated the claim of the relator without consideration of all of the documents within the claim file, which included allowed claims stated on the semiannual report of claim payments the C–174 forms signed by the self-insured employer.

In his renewed motion for summary judgment, appellant relied on the holding of *Baker* that "a self-insured employer who, subsequent to the initial allowance of a claim, certifies a medical condition as allowed on a 'Self–Insured Semi–Annual Report of Claim Payments' (form C–174) has conclusively granted that additional condition as part of the claim." *Id.,* 69 Ohio St.3d at 208, 631 N.E.2d at 144. The court in *Baker* expressly approved the holdings of both *Garrett v. Jeep* and *State ex rel. Jones.*

It is the position of the plaintiff, therefore, that the trial court erred when it failed to grant summary judgment in his favor on a condition which listed that condition as "allowed on the C–174."

■ The motion for summary judgment "forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Hillside opposed both motions and distinguished *Garrett, Jones* and *Baker,* the cases upon which the plaintiff relied in both his summary judgment and his renewed summary judgment motions.

■ Hillside presented evidence with its briefs in opposition to each motion for summary judgment which enabled Hillside to show that a genuine issue of material fact existed as to whether the employer itself actually certified the conditions as submitted on the C–174 forms. Hillside supported its position with documentary evidence in the form of affidavits and documents that the employer, itself, did not certify the conditions at issue as allowed and, in fact, disputed the allowance of the conditions. The trial court overruled each of the summary

judgment motions. Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made. *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, at the syllabus.

Plaintiff failed to adduce at trial the factual proof upon the outstanding issues of whether the purported certifications were those of the self-insured employer as required in *Baker* and whether it was the employer who made the determination and certified the claim as *Garrett* requires. Thus, the documentary proof offered by Hillside in its favor with its briefs in opposition remained unopposed at trial, and the summary judgment motion decisions are rendered moot and harmless.

We therefore find the appellant's first assignment of error moot and unreviewable as a matter of law.

Plaintiff's Second and Third Assignments of Error

■ We shall consider the plaintiff's second and third assignments of error together as they each relate to his claim of post-traumatic stress disorder, which he claims arose as a result of the compensable injury which he incurred.

The second and third assignments of error read as follows:

"In a workers' compensation de novo appeal, where the evidence admitted without objection establishes that as a proximate result of the work-related accident, claimant/appellant not only sustained a cerebral concussion, post-concussional syndrome and post-traumatic headaches, but also additionally sustained a post-traumatic stress disorder which evolved from the post-concussional syndrome, it is reversible error for the trial court to refuse to submit the claim of post-traumatic stress disorder for jury determination.

"In a workers' compensation de novo appeal, where the trial court erroneously excludes from jury determination appellant's claimed condition pursuant to the admitted unopposed evidence of post-traumatic stress disorder, and where, in final argument, counsel for the employer openly admits, agrees and concedes to the jury that appellant did sustain post-traumatic stress disorder, the court of appeals should order the entry of judgment in favor of appellant that he is entitled to participate in the Workers' Compensation Fund for that condition."

Plaintiff argues that the trial court improperly overruled his request to amend the complaint and instruct the jury along with an interrogatory on the post-traumatic stress disorder injury which had been introduced in the evidence virtually by the "consent" of the parties. Plaintiff contends that Hillside would not have been prejudiced where Hillside was the party that introduced the issue.

Although the claimed injuries had been in dispute in this matter since 1989, at no time during the administrative proceedings or during the appellate review in common pleas court had the plaintiff made a claim that he had sustained a post-traumatic stress disorder as a proximate result of the work-related accident. Plaintiff contends that the issue of post-traumatic stress disorder should have been presented to the jury for determination because even Hillside admitted in its final argument that plaintiff sustained a post-traumatic stress disorder which was caused by the work-related accident and evolved from the concussion and postconcussion syndrome, all of which was opined in evidence by Dr. Tucker.

Hillside argues that since no claim or decision on any mental condition has ever been made in this matter, conditions not decided administratively cannot be tried on appeal pursuant to R.C. 4123.519. Hillside argues that the jurisdiction of the court of common pleas in workers' compensation matters is purely appellate and wholly statutory in origin. *Breidenbach v. Mayfield* (1988), 37 Ohio St.3d 138, 524 N.E.2d 502. The jurisdiction of the court of common pleas is provided for in R.C. 4123.519, which states that "the claimant or employer may appeal a decision of the industrial commission * * *. * * * [In] issues not yet decided by the industrial commission, the court of common pleas correctly found that it has no jurisdiction over these claims." *Brooks v. Brost Foundry Co.* (May 2, 1991), Cuyahoga App. No. 58065, unreported, at 11–12, 1991 WL 69341.

Plaintiff contends that where, as here, the additional condition is not a new and independent one but evolves from a physical condition which was allowed by the commission, the *de novo* nature of the common pleas proceedings permits inclusion where appropriate. The most recognized circumstance is a mental claim arising out of a physical injury ordered as allowed by the commission. See *Grant v. Ohio Dept. of Liquor Control* (1993), 86 Ohio App.3d 76, 619 N.E.2d 1165, and *Kokitka v. Ford Motor Co.* (July 22, 1993), Cuyahoga App. No. 63207, unreported, 1993 WL 276950. In *Kokitka,* the court held that the claim for an aggravation of a preexisting condition, not determined by the commission, was properly included in the *de novo* trial where the allowance claim for the injured body part itself, allegedly aggravated, had been adjudicated by the commission.

While both parties discuss at length whether such a "flow through" mental injury may be introduced on appeal *de novo,* this question need not be reached in the case *sub judice.* The cases upon which the plaintiff relies are distinguishable from the matter at hand.

■ The limitations period for workers' compensation claims involving "residual" and "flow through" injuries begins to run when claimant knows or has reason to know of causal relationship between original injury and subsequent residual or flow through injury. *Dietrick v. Ohio Bur. of Workers' Comp.* (1991), 72 Ohio App.3d 567, 571, 595 N.E.2d 513, 516.

**174**

A review of the record in this matter reveals that the diagnosis of post-traumatic stress disorder was noted by Dr. Tucker in a letter dated October 10, 1989. "R.C. 4123.84 requires a claimant to file a motion for an additional allowance within two years of the time the claimant knew or should have known of the additional condition." *Clementi v. Wean United, Inc.* (1988), 39 Ohio St.3d 342, 530 N.E.2d 909, syllabus.

Plaintiff contends that Hillside has been on notice since October 1989. We disagree. We cannot conclude that the failure to comply with the written notice requirement here was a mere technicality, even following the reasoning of the court in *Kokitka*, where the court stated:

"Although R.C. 4123.84(A) requires that written notice of the specific part or parts of the body claimed to have been injured must be made to the industrial commission or the bureau of workers' compensation, the statute does not define the type of written notice required. In fact, the Ohio Supreme Court has expressly recognized that '[t]he statute does not mandate that the notice be given on any particular form or on any particular blank of that form.' *Toler v. Copeland Corp.* (1983), 5 Ohio St.3d 88, 5 OBR 140, 448 N.E.2d 1386, syllabus. Moreover, an injured employee's claim should not be unjustly defeated by a mere technicality. *Id; Roma v. Indus. Comm.* (1918), 97 Ohio St. 247 [119 N.E. 461]." *Kokitka, supra,* at 35.

The parties to this matter have disputed the validity of these claims since 1989. For four years, the plaintiff failed to place Hillside on notice that he intended to claim post-traumatic stress disorder as a compensable injury despite numerous opportunities to do so at the administrative level. Even as late as the morning of the *de novo* trial in this matter, when the parties stipulated on the record as to the claims which were acknowledged by the employer and those which were in dispute, the plaintiff made no claim for the inclusion of the post-traumatic stress disorder injury. Plaintiff's assertion that the amendment of the complaint at the end of the trial would not prejudice the employer is simply wrong. We agree with the finding of the court in *State ex rel. Morrow v. Indus. Comm.* (1994), 71 Ohio St.3d 236, 643 N.E.2d 118, where the court stated that "a bare reference to medical conditions, as here, in a physician's correspondence or medical test summary does not constitute a request for recognition of that condition by a claimant." *Id.* at 238, 643 N.E.2d at 121. The totality of the circumstances here indicates to us that the passing mention of post-traumatic stress disorder in the October 10, 1989 letter is insufficient to put the employer "on notice" of a claim for such injury so as to toll the statute of limitations.

There is no evidence or claim that plaintiff has ever asked in any way, shape or form for an allowance for post-traumatic stress disorder. Pursuant to the statute of limitations, the limitation period for filing this claim would have run by October

10, 1991 and, therefore, the claim for post-traumatic stress disorder is time-barred. There was no error on the part of the trial court for failure to submit this claim to the jury.

Even assuming *arguendo* that the trial judge had allowed the amendment of the pleadings to permit the plaintiff to make a claim for a post-traumatic stress disorder, we note that this disorder is a "mental disorder" which would require medical proof of a licensed psychiatric specialist or clinical psychologist in order to support plaintiff's claim. Plaintiff did not proffer such expert testimony at any time during the administrative proceedings or at trial.

Plaintiff's second and third assignments of error are not well taken.

Plaintiff's Fourth Assignment of Error

"O.R.C. Section 4123.512(F) violates the federal and Ohio Constitutions insofar as it imposes a maximum cap of $2,500.00 on attorney fees available to trial counsel on behalf of a prevailing claimant in a de novo appeal of a workers' compensation claim and, thus, it is reversible error for the trial court to refuse to consider any amount of attorney fees in excess of $2,500.00."

█ Plaintiff contends that since the verdict and judgment in a *de novo* appeal is nonmonetary, the Ohio legislature saw fit to establish the principle that the attorney fees should be taxed to the employer or the commission if the claimant establishes at trial a right to participate or to continue to participate under the Act. R.C. 4123.512(F).

█ It is rudimentary that, in order for one to have a right to challenge a statute upon a constitutional basis, the person posing such a challenge must, in fact, be adversely affected by that statute. *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971.

The *Palazzi* court held that "the constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Id.* at 175, 512 N.E.2d at 977.

The testimony adduced at the hearing indicated that plaintiff did not have standing to bring this challenge as he himself would not be adversely affected by the limitation of the statute. Further, there is not even an argument that he could be adversely affected by the potential "chilling effect" this monetary limitation may have upon the securing of competent counsel.

Therefore, where the testimony adduced indicates that the plaintiff has not been injured by the statute and no claim has been made by the plaintiff that he

has been injured by the alleged unconstitutional provision of the statute, we find that the plaintiff has not demonstrated standing to bring this claim.

In light of the resolution of the threshold issue in which we have determined the plaintiff's lack of standing to bring this constitutional claim, we need not address his due process and equal protection claims.

Plaintiff's fourth assignment of error is not well taken. The decision of the trial court is affirmed.

Cross-appellant Hillside's First Assignment of Error

"The trial court erred in overruling Hillside Dairy Company's motion for judgment notwithstanding the verdict with regard to McKenney's alleged 'concussion,' 'post-concussional syndrome,' and 'post-traumatic headaches' because no evidence establishing that any of the same were either physical injuries or compensable mental injuries was adduced at trial."

■ Cross-appellant Hillside argues that the medical testimony adduced at trial indicates the absence of medical opinion testimony to the effect that plaintiff's concussion, postconcussion syndrome or post-traumatic headaches either constituted or resulted from anatomical damage of any kind. Hillside argues that because of two fundamental rules which govern workers' compensation injury matters, *i.e.*, that (1) there must be actual anatomical damage in a physical injury case, and (2) there must be an antecedent causative physical injury in a mental injury case, no prima facie case has been made for plaintiff's right to participate for the three subject diagnoses.

■ The applicable standard of review to appellate challenges to the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334. A motion for a judgment notwithstanding the verdict pursuant to Civ.R. 50(B) tests the legal sufficiency of the evidence. *Brooks v. Brost Foundry Co.* (May 2, 1991), Cuyahoga App. No. 58065, 1991 WL 69341. "A review of the trial court's denial of appellants' motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *." *Shore, Shirley & Co. v. Kelley* (1988), 40 Ohio App.3d 10, 13, 531 N.E.2d 333, 337.

It is Hillside's position that, regardless of whether the court applies the physical injury test under the statute or the Ohio Jury Instructions test of "something for which benefits can be paid," none of the conditions at issue falls within the statutory definition of a compensable "injury" established in R.C. 4121.01(C). We disagree.

The testimony adduced at trial indicates that plaintiff's claims of concussion, postconcussion syndrome and post-traumatic headaches were physical in nature. Dr. Tucker testified that a concussion is a "flattening of the brain's electrical impulse" and that postconcussion syndrome is a group of symptoms that follow a concussion, probably representing an upset of brain physiology. Dr. Tucker identified the postconcussion syndrome as an "authentic organic process" which may include, *inter alia,* headache, distortion of the eyes, blurred vision and double vision. With respect to the post-traumatic headaches, Dr. Tucker testified that the headaches are sometimes vascular and pounding and sometimes a "muscle type of squeezing."

Based upon the entirety of the record before us, we find that adequate testimony was adduced at trial to place into controversy the question of whether the injuries plaintiff suffered, described as concussion, postconcussion syndrome and post-traumatic headaches, are physical and/or physiological injuries and whether these injuries so described are compensable pursuant to R.C. 4123.01(C). Thus, construing the evidence in the light most favorable to plaintiff, we find sufficient evidence existed from which reasonable minds might differ as to whether the claimed injuries were compensable physical injuries pursuant to R.C. 4123.01(C). Therefore, it was not error for the trial court to deny Hillside's motion for a judgment notwithstanding the verdict.

Hillside's first cross-assignment of error is not well taken.

Hillside's Second Assignment of Error

"The trial court committed error prejudicial to Hillside Dairy Company in determining that McKenney was the 'prevailing party' under the jury's verdict and, thus, was entitled to any award of costs and attorney fees at all."

Hillside argues that R.C. 4123.519(E) and current R.C. 4123.512(F) authorize the trial court to tax costs and attorney fees against the commission or an employer who unsuccessfully contests the right of a claimant to "participate in the fund." Hillside argues that what the statute does not contemplate is the circumstance which occurred in this case: a split decision whereby even though the basic right of participation for some of several previously allowed injuries is reaffirmed, the unavoidable legal effect of the jury's denial of the remainder of what was administratively allowed not only automatically entitles the employer to a surplus fund reimbursement of everything that it was theretofore required to pay *pendente lite* but also requires the claimant to make good all undeserved amounts of R.C. 4123.56 compensation theretofore received under the administrative allowance challenged by appeal. Hillside argues that the economic facts of this case are compellingly clear and dispositive. We are not so convinced.

Hillside relies on the Supreme Court method of analysis to determine "who won" in civil cases. Hillside relies upon *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 555, 597 N.E.2d 153, 156, where the court held:

"We also differ from the court of appeals in that we do not view the Vances as the prevailing party. The trial in this case, although *de novo*, is an appeal from an arbitration award. A party who goes into such a trial with an award of $10,000, and emerges with $5,000, can hardly be said to have prevailed. Loc.R. 2.53(Z) is therefore not contrary to Civ.R. 54(D) to the extent that it authorizes an award of costs to Roedersheimer."

We find Hillside's reliance upon *Vance* misplaced. We do not believe that the same analysis should be applied here.

It appears that what Hillside is inviting this court to do, without any direct case authority, is to engraft onto the statutory language "the right to participate or continue to participate" the additional phrase "as to all of the allowances contested by the employer or most of the allowances contested by the employer." Under ordinary rules of statutory construction, this court should give effect to the natural and clear meaning of the words "right to participate."

We believe that Hillside's split-decision "legal economic effects" argument should be addressed to the legislature, not to the trial court or this court of appeals.

While Hillside makes much of the "prevailing party" argument, a plain reading of the statute indicates that the requirement, as enunciated by the statute, is "right to participate" and not "prevailing party." Therefore, where, as here, the claimant is found to have the right to participate, any discussion of "split decision" is unnecessary to the determination pursuant to the plain language of the statute.

We, therefore, find Hillside's second cross-assignment of error not well taken and affirm the determination of the trial court, which awarded costs and attorney fees to plaintiff.

Hillside's Third Assignment of Error

"The trial court erred in allowing McKenney to recover any costs connected with Dr. Kaffen's deposition because same was cumulative, unnecessary and non-vital."

Hillside has grounded its argument on the basis that this court's well-settled test for deposition-related expenses is that the deposition needs to be both necessary and vital to the presentation of the case. *Bookatz v. Kupps* (1987), 39 Ohio App.3d 36, 528 N.E.2d 961, and *Jones v. Pierson* (1981), 2 Ohio App.3d 447, 2 OBR 542, 442 N.E.2d 791. Plaintiff contends that the standard of "necessary

and vital" is not necessarily the appropriate one here. R.C. 4123.512(D) does not suggest such a standard. We agree.

R.C. 4123.512(D) states:

" * * * Any party may file with the clerk prior to the trial of the action a deposition of any physician taken in accordance with the provisions of the Revised Code, which deposition may be read in the trial of the action even though the physician is a resident of or subject to service in the county in which the trial is had. The bureau of workers' compensation shall pay the cost of the deposition filed in court and of copies of the deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate or continue to participate is finally sustained or established in the appeal * * *."

Hillside notes that in *State ex rel. Williams v. Colasurd* (1995), 71 Ohio St.3d 642, 646 N.E.2d 830, the court stated that the reimbursement to a claimant of his own expert witness fee "hinges on a claimant's successful establishment of a right to participate for the condition at issue." Hillside contends that because the jury rejected the plaintiff's claim regarding the lumbar injuries, the plaintiff was "unsuccessful" in his establishment of his right to participate for the condition at issue. Hillside's argument is disingenuous at best. Here, both Dr. Kay, the treating physician, and Dr. Kaffen, the orthopedic specialist, were called to establish that plaintiff's alleged cervical strain and lumbar injuries were compensable injuries within the statute. Despite the fact that the jury did not find that the lumbar injuries were compensable injuries, the plaintiff's expert did testify to the cervical injuries, for which it was determined that he had the right to participate. The statutory directive is clear and unambiguous that where the claimant's right to participate or continue to participate exists, the costs of the deposition shall be charged against the unsuccessful party. *State ex rel. Williams v. Colasurd* (1995), 71 Ohio St.3d 642, 646 N.E.2d 830.

Hillside's cross-assignment of error is not well taken. The costs of plaintiff's expert deposition are to be charged to the unsuccessful party here, Hillside. The judgment of the trial court is affirmed.

Cross–Assignment of Error of Cross-appellants Administrator of Workers' Compensation and Industrial Commission of Ohio:

"The trial court erred in taxing the costs of both stenographic and videotape forms of the depositions of plaintiff's expert witnesses to the Bureau of Workers' Compensation."

██ Pursuant to statute, the costs of deposition are payable to a claimant regardless of the outcome of the litigation.

R.C. 4123.519(C), now R.C. 4123.512(D), states:

"The bureau of workers' compensation shall pay the cost of the deposition filed in the court and of copies of the deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate or continue to participate is finally sustained or established in the appeal."

The trial court in the case *sub judice* taxed both the stenographic and videotape costs of the depositions of Dr. Kay and Dr. Kaffen, the expert witnesses for the plaintiff, to the Bureau of Workers' Compensation. The bureau argues that it should be required to pay only for one form of deposition. We agree.

The Supreme Court in *State ex rel. Williams v. Colasurd, supra*, 71 Ohio St.3d 642, 646 N.E.2d 830, addressed the identical issue where the claimant's expert witness was preserved in both stenographic and videotape form. The court in *Williams* held that the term "costs" is not synonymous with the term "expenses." The court noted that the commission's policy allows for the reimbursement of only one form of deposition. The court, citing *State ex rel. Hakos v. Colasurd* (Dec. 28, 1993), Franklin App. No. 92AP–1151, unreported, at 5, 1993 WL 540288, stated that "a claimant initially has the option of using a written deposition or videotape. The costs of one of these forms of deposition is reimbursable." *Williams, supra*, at 644, 646 N.E.2d at 832. Following the decision in *Williams*, we find that the second form of deposition is an "expense" of the litigation and not a "cost" within the meaning of the statutory definition and, therefore, the Bureau should be required to pay for only one form of each deposition.

This cross-assignment of error is well taken, and the determination of the trial court taxing double deposition costs to the bureau is reversed. The costs of the stenographic depositions in this matter are properly taxable to the Industrial Commission pursuant to the statutory mandate.

*Judgment affirmed in part*
*and reversed in part.*

HARPER, P.J., and PORTER, J., concur.